N_ △tc Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2261 | **DATE** | 9/11/2002 |
| **CASE TITLE** | CONSUELA SMITH vs. THE CHICAGO ARACHDIOCESE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The Catholic Bishop and Cardinal George's motion to dismiss is denied. Phelan and Mehalek's motion to dismiss is denied. Phelan and Mehalek's motion for a more definite statement is granted. Plaintiffs are ordered to make a more definite statement as to all claims alleged against the "Defendants", indicating which Defendant(s) the allegation is made against. Plaintiffs' more definite statement is to be filed on or before 9/27/02. All defendants are to answer or otherwise plead on or before 10/11/02. Status hearing is set for 10/22/02 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 12 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONSUELA SMITH, a mother and next friend of "BOY Y", a minor; individually, AUDREY HAYES, a mother and next friend of "BOY W" and "BOY X", minors; FRANK and DEBRA GRIGGS, mother and next friend of "BOY Z", individually and on behalf of the Parents and next Friend of the SAINTS OF SAINT SABRINA BASKETBALL PLAYERS, <br><br> Plaintiffs, <br><br> v. <br><br> THE CHICAGO ARCHDIOCESE; CARDINAL FRANCIS GEORGE; THE SOUTHSIDE CATHOLIC CONFERENCE, a non-profit organization; MICHAEL PHELAN, Southside Catholic Conference Chairman; and MIKE MEHALEK, Southside Catholic Conference Commissioner, <br><br> Defendants. | No. 02 C 2261 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a single-count complaint against Defendants, alleging Defendants intentionally discriminated against them based on the Plaintiffs' race in violation of 42 U.S.C. § 1981. Presently pending before the Court is the Chicago Bishop of Chicago[1] and Cardinal Francis George's Motion to Dismiss and Michael Phelan ("Phelan") and Mike Mehalek's ("Mehalek") Motion to Dismiss and for a More Definite Statement.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is only

---

[1] Plaintiffs filed suit against the Archdiocese of Chicago, the legal name for the Archdiocese of Chicago is the Catholic Bishop of Chicago.

warranted if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A reading of the Amended Complaint supports the following summary of the alleged conduct of the parties.

Plaintiffs are the parents and next friends of their minor sons, who are African American students and basketball players of Saint Sabrina Academy ("St. Sabrina"), an outreach ministry of Saint Sabrina Church and grade school. The Catholic Bishop of Chicago ("Catholic Bishop") maintains an agency relationship with Catholic schools, including the schools' athletic programs and the Southside Catholic Conference ("SCC"). The SCC is an athletic league made up of twenty-one white Catholic parishes that are members of and controlled by the Chicago Bishop. Cardinal Francis George ("Cardinal George"), a white male, is the head of the Catholic Bishop and the principal agent of Catholic parishes and the SCC.

In May 2001, St. Sabrina applied for membership in the SCC on behalf of the Plaintiffs as third-party beneficiaries. That same month, Plaintiffs were intentionally denied membership in the SCC by an 11-to-9 vote solely because of their race. The SCC stated that the reason membership was denied was because St. Sabrina was located in a high crime area and was therefore unsafe for whites. These terms and conditions varied from the terms and conditions agreed to with non-African American members and applicants.

In June 2001, following a directive from the Catholic Bishop, Plaintiffs were granted membership in the SCC. In consideration of the membership, the SCC received a $3,000 admission fee originated from athletic fees Plaintiffs paid to St. Sabrina. In July 2001, Plaintiffs were intentionally forced to withdraw from the SCC solely because of their race.

2

The Defendants proposed to admit the Plaintiffs into the SCC pursuant to racially discriminatory and unequal terms and conditions of competition that required the Plaintiffs to play all of their games on the road for five years so that white teams would not have to play at Plaintiffs' African American school and in an African American community. Plaintiffs were required to play some away games at "neutral" sites because the SCC did not want African Americans on their premises. In total, of the 13 games played at neutral sites, Plaintiffs were required to play 8 games at such sites; this number is racially disproportionate to the number of games played by Caucasian teams. These terms and conditions varied from the terms and conditions agreed to with non-African American players and teams.

Defendants also failed and refused to protect the health, safety, and welfare of the Plaintiffs by failing to provide security or police presence at Plaintiffs' away games. Defendants' failure to provide such services put Plaintiffs at risk of bodily harm and racial slurs because of their race and their attempt to enforce their right to make and enforce contracts.

Cardinal George admonished priests, nuns, and laypersons that refused to admit Plaintiffs into the SCC, but he failed to intervene after the Plaintiffs were admitted to the SCC when he knew or should have known that Plaintiffs were being discriminated against solely because of their race.

In August 2001, following negotiations with the SCC by Plaintiffs' superiors, the Plaintiffs again joined the SCC. However, the terms and conditions varied from the terms and conditions agreed to with non-African American member basketball players and teams. At a September 2001, SCC board meeting in which boys' basketball was a discussion topic, no one raised the issue of "special" or "unwritten rules" regarding the basketball playoffs.

3

Subsequently, Plaintiffs were denied the right to make and enforce contracts enjoyed by Caucasian SCC members and subjected to an "unwritten" rule that prohibited Plaintiffs' seventh graders from also playing on an eighth-grade team during the conference playoffs. Such prohibition damaged the Plaintiffs' post-season conference chances because two of the Plaintiffs were also members of the eighth-grade team.

On December 18, 2001, Plaintiffs were intentionally subjected to racial hostility when a Caucasian coach of Saint Linus refused to shake the hand of Plaintiffs' coach solely because of race. On January 20, 2002, Saint Bede players intentionally engaged in racially motivated conduct and shouted racial slurs at "Boy Y".

Cardinal George, upon request, failed to take remedial action to resolve the escalating racial hostility toward Plaintiffs' efforts to enforce their contractual rights when he knew or should have known that Plaintiffs were being denied the same rights as non-African American players and members.

Plaintiffs were also subjected to racially segregated facilities, inadequate facilities, sometimes denied accommodations made available to Caucasians, subjected to racial insults, forced to sit in racially segregated areas, subjected to racial profiling by suburban police, subjected to racial isolation, and subjected to a form of racial silence solely because of their race and their attempt to enforce their right to make and enforce contracts.

The SCC encouraged league officials to discriminate against the Plaintiffs by not taking remedial or corrective measures and encouraged league coaches to threaten Plaintiffs with game forfeitures because of the Plaintiffs' race and their attempt to make and enforce contracts. The SCC also conspired and encouraged official racial hostility and discrimination against the

4

Plaintiffs solely for the purpose of forcing the Plaintiffs out of the SCC.

The Defendants' conduct discouraged Plaintiffs' parents from participating in SCC games in fear that Plaintiffs would be physically harmed, thus causing them to withdraw from the SCC. Furthermore, the Plaintiffs sought to enforce their mediation rights, and Defendants failed and refused to follow its own mediation procedures involving a racial incident.

1. Catholic Bishop and Cardinal George's Motion to Dismiss

Catholic Bishop and Cardinal George argue that Plaintiffs' Amended Complaint fails to state a claim under Section 1981 for which relief can be granted.

To establish a claim under Section 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination deprived the plaintiff of one or more of the rights enumerated in Section 1981, i.e., the making and enforcement of a contract. *See Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1996). The making and enforcement of a contract right under Section 1981 includes third-party beneficiaries of a contract. *See Jones v. Local 520, Int'l Union of Operating Eng.*, 603 F.2d 664, 665 (7th Cir. 1979).

The parties do not dispute that the Plaintiffs have sufficiently pled the first and second element of a Section 1981 claim. As to the third element, Chicago Bishop and Cardinal George argue that the Amended Complaint fails to allege any contractual relationship that would give rise to a Section 1981 claim.

Plaintiffs allege that written guidelines, programs, and policies of St. Sabrina constitute a contractual relationship with the Plaintiffs. In addition, the Catholic Bishop's guidelines, programs, and policies constitute a contractual relationship with the Plaintiffs. Defendants'

5

alleged conduct deprived the Plaintiffs of the full and equal enjoyment of goods, services, facilities, privileges, and advantages, including the right to make and enforce these contracts, in respect to the athletic programs as are enjoyed by Caucasian citizens. Based on these allegations and the facts set forth above, the Plaintiffs have sufficiently pled that the Chicago Bishop and Cardinal George interfered with the Plaintiffs' right to enforce the contracts between themselves and St. Sabrina and the Catholic Bishop.

2. Phelan and Mehalek's Motion to Dismiss and for a More Definite Statement

Phelan and Mehalek argue that Plaintiffs' Amended Complaint fails to state a claim for which relief can be granted because the Amended Complaint fails to allege that Phelan and Mehalek discriminated on the basis of race or refused to make or enforce a contract with the Plaintiffs. In the alternative, Phelan and Mehalek seek a more definite statement because they are unable to respond to the allegations that simply allege that the "Defendants" engaged in some type of conduct.

Other than the caption, Phelan is not named in the Amended Complaint except for the allegation that he is the "chairperson of the Southside Catholic Conference [and] was unaware of [the] 'unwritten rule'" discussed above. Similarly, Mehalek is not named except for the allegation that he is "the Southside Catholic Conference Commissioner [who] was unaware of any 'unwritten rule' because all SCC rules are in writing." Other than these two allegations, Phelan and Mehalek are not specifically named in any allegations. However, the Plaintiffs do make multiple allegations that the "Defendants" engaged in conduct that was based on race and that such conduct interfered with the making and enforcement of the above contracts. Because Phelan and Mehalek are named "Defendants", these allegations, as presently written, include

6

Phelan and Mehalek. In light of these allegations, the Plaintiffs have pled a cause of action under Section 1981.

However, Phelan and Mehalek correctly argue that because of the number of named defendants, they are unable to adequately respond to the Amended Complaint because they cannot properly determine which allegations are made against them. Accordingly, Phelan and Mehalek's Motion for a More Definite Statement is granted.

Based on the above, the Catholic Bishop and Cardinal George's Motion to Dismiss is Denied. Phelan and Mehalek's Motion to Dismiss is denied. Phelan and Mehalek's Motion for a More Definite Statement is granted. Plaintiffs are ordered to make a more definite statement as to all claims alleged against the "Defendants", indicating which Defendant(s) the allegation is made against. Plaintiffs' more definite statement is to be filed on or before September 27, 2002. All Defendants are to answer or otherwise plead on or before October 11, 2002. A status hearing is scheduled for October 22, 2002, at 9:00 a.m.

Dated: September 11, 2002

JOHN W. DARRAH
United States District Judge