# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2261 | **DATE** | 1/23/2003 |
| **CASE TITLE** | CONSUELA SMITH, et al vs. THE CHICAGO ARCHDIOCESE, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 3/25/03 at 9:00 a.m. Enter Memorandum Opinion and Order. Defendants Phelan and Mehalek's motion to dismiss and for a more definite statement is denied..Defendant's answer to be filed by 2/25/03. Parties to exchange rule 26 disclosures by 2/25/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 27 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 38 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | LG courtroom deputy's initials | 03 JAN 26 PM 6:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSUELA SMITH, a mother and next friend of "BOY Y", a minor; AUDREY HAYES, a mother and next friend of "BOY W" and "BOY X", minors; FRANK and DEBRA GRIGGS, mother and next friend of "BOY Z", individually and on behalf of the Parents and next Friend of the SAINTS OF SAINT SABRINA BASKETBALL PLAYERS,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHICAGO ARCHDIOCESE; CARDINAL FRANCIS GEORGE; THE SOUTHSIDE CATHOLIC CONFERENCE, a non-profit organization; MICHAEL PHELAN, Southside Catholic Conference Chairman; and MIKE MEHALEK, Southside Catholic Conference Commissioner,<br><br>Defendants. | DOCKETED<br><br>JAN 2 7 2003<br><br>No. 02 C 2261<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a single-count complaint against Defendants, alleging Defendants intentionally discriminated against them based on the Plaintiffs' race in violation of 42 U.S.C. § 1981. Previously, this Court denied the Defendants' Motions to Dismiss and granted Michael Phelan ("Phelan") and Mike Mehalek's ("Mehalek") Motion for a More Definite Statement. Plaintiffs subsequently filed a two-count Second Amended Complaint, both counts alleging a violation of 42 U.S.C. § 1981. Presently pending before the Court is Phelan and Mehalek's Motion to Dismiss and for a More Definite Statement.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is

38

warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff need not plead facts or the elements of a claim, with those exceptions specified in Rule 9. Instead, a plaintiff need only plead the bare minimum facts necessary to put a defendant on notice of the claim so that the defendant can file an answer. *See Swierkiewicz v. Sorema*, 122 S.Ct. 992, 996 (2002) (*Sorema*); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (*Higgs*).

A reading of the Amended Complaint supports the following summary of the alleged conduct of the parties.

Plaintiffs are the parents and next friends of their minor sons, who are African-American students and basketball players of Saint Sabrina Academy ("St. Sabrina"), an outreach ministry of Saint Sabrina Church and grade school. The Catholic Bishop of Chicago ("Catholic Bishop") maintains an agency relationship with Catholic schools, including the schools' athletic programs and the Southside Catholic Conference ("SCC"). The SCC is an athletic league made up of twenty-one white Catholic parishes that are members of and controlled by the Chicago Bishop. Cardinal Francis George ("Cardinal George"), a white male, is the head of the Catholic Bishop and the principal agent of Catholic parishes and the SCC. Phelan is a white male who is the Chairman of the SCC. Mehalek is also a white male and is the Commissioner of the SCC.

In May 2001, St. Sabrina applied for membership in the SCC on behalf of the Plaintiffs as third-party beneficiaries. That same month, Plaintiffs were intentionally denied membership in the SCC by an 11-to-9 vote solely because of their race. The SCC stated that the reason membership was denied was because St. Sabrina was located in a high crime area and, therefore, unsafe for whites. These terms and conditions varied from the terms and conditions agreed to

2

with non-African-American members and applicants.

Phelan and Mehalek and the SCC violated Article I of the SCC Constitution and the By-Laws by failing to foster an organized athletic competition between and among Plaintiffs and other SCC members solely because of race. Phelan and Mehalek, under the authority of the Board of Directors and Executive Board and as agents of the SCC, imposed admission requirements on Plaintiffs which resulted in the denial of membership, a term and condition that varied from previous terms agreed to with non-African-American members. Phelan presided over the May 2001 meeting and participated in the discriminatory conduct. Mehalek was present at the May 2001 meeting and also participated in the discriminatory conduct.

In June 2001, following a directive from the Catholic Bishop, Plaintiffs were granted membership in the SCC. In consideration of the membership, the SCC received a $3,000 admission fee originated from athletic fees Plaintiffs paid to St. Sabrina. In July 2001, Plaintiffs were intentionally forced to withdraw from the SCC solely because of their race.

The Defendants proposed to admit the Plaintiffs into the SCC pursuant to racially discriminatory and unequal terms and conditions of competition that required the Plaintiffs to play all of their games on the road for five years so that white teams would not have to play at Plaintiffs' African-American school and in an African-American community. Plaintiffs were required to play some away games at "neutral" sites because the SCC did not want African-Americans on their premises. In total, of the 13 games played at neutral sites, Plaintiffs were required to play 8 games at such sites; this number is racially disproportionate to the number of games played by Caucasian teams. These terms and conditions varied from the terms and conditions agreed to with non-African-American players and teams.

Defendants also failed and refused to protect the health, safety, and welfare of the Plaintiffs by failing to provide security or police presence at Plaintiffs' away games. Defendants' failure to provide such services put Plaintiffs at risk of bodily harm and racial slurs because of their race and their attempt to enforce their right to make and enforce contracts.

Cardinal George admonished priests, nuns, and laypersons that refused to admit Plaintiffs into the SCC, but he failed to intervene after the Plaintiffs were admitted to the SCC when he knew or should have known that Plaintiffs were being discriminated against solely because of their race.

In August 2001, following negotiations with the SCC by Plaintiffs' superiors, the Plaintiffs again joined the SCC. However, the terms and conditions varied from the terms and conditions agreed to with non-African-American member basketball players and teams. At a September 2001 SCC board meeting in which boys' basketball was a discussion topic, no one raised the issue of "special" or "unwritten rules" regarding the basketball playoffs. Subsequently, Plaintiffs were denied the right to make and enforce contracts enjoyed by Caucasian SCC members and subjected to an "unwritten" rule that prohibited Plaintiffs' seventh graders from also playing on an eighth-grade team during the conference playoffs. Such prohibition damaged the Plaintiffs' post-season conference chances because two of the Plaintiffs were also members of the eighth-grade team.

On December 18, 2001, Plaintiffs were intentionally subjected to racial hostility when a Caucasian coach of Saint Linus refused to shake the hand of Plaintiffs' coach solely because of race. On January 20, 2002, Saint Bede players intentionally engaged in racially motivated conduct and shouted racial slurs at "Boy Y".

Cardinal George, upon request, failed to take remedial action to resolve the escalating racial hostility toward Plaintiffs' efforts to enforce their contractual rights when he knew or should have known that Plaintiffs were being denied the same rights as non-African-American players and members.

Plaintiffs were also subjected to racially segregated facilities, inadequate facilities, sometimes denied accommodations made available to Caucasians, subjected to racial insults, forced to sit in racially segregated areas, subjected to racial profiling by suburban police, subjected to racial isolation, and subjected to a form of racial silence solely because of their race and their attempt to enforce their right to make and enforce contracts.

The SCC encouraged league officials to discriminate against the Plaintiffs by not taking remedial or corrective measures and encouraged league coaches to threaten Plaintiffs with game forfeitures because of the Plaintiffs' race and their attempt to make and enforce contracts. The SCC also conspired and encouraged official racial hostility and discrimination against the Plaintiffs solely for the purpose of forcing the Plaintiffs out of the SCC.

The Defendants' conduct discouraged Plaintiffs' parents from participating in SCC games in fear that Plaintiffs would be physically harmed, thus causing them to withdraw from the SCC. Furthermore, the Plaintiffs sought to enforce their mediation rights, and Defendants failed and refused to follow its own mediation procedures involving a racial incident.

To establish a claim under Section 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination deprived the plaintiff of one or more of the rights enumerated in Section 1981, *i.e.*, the making and enforcement of a contract. *See Morris v. Office Max*, 89 F.3d 411, 413 (7th

Cir. 1996). The making and enforcement of a contract right under Section 1981 includes third-party beneficiaries of a contract. *See Jones v. Local 520, Int'l Union of Operating Eng.*, 603 F.2d 664, 665 (7th Cir. 1979).

The parties do not dispute that the Plaintiffs have sufficiently pled the first and third elements of a Section 1981 claim. Phelan and Mehalek assert that the Second Amended Complaint fails to adequately plead the intentional conduct of the Defendants, including that Phelan and Mehalek exerted managerial control or influence over the SCC, that is required under Section 1981 liability.

At this stage of the litigation, Plaintiffs have sufficiently pled a cause of action against Phelan and Mehalek. As to the intentional conduct of these Defendants, Plaintiffs plead that these Defendants: violated their duties under the SCC's Constitution and By-Laws by imposing terms and conditions on Plaintiffs which varied from terms agreed upon with non-African-American members and applicants; forced the Plaintiffs to withdraw from the SCC because of their race; proposed to admit Plaintiffs to the SCC pursuant to racially discriminatory and unequal terms and conditions; and failed and refused to protect Plaintiffs' health, safety, and welfare at games. These allegations place Phelan and Mehalek on notice of the claims of intentional discrimination against them and the basis of these claims.

Furthermore, Plaintiffs allege that Phelan is the chairman of the SCC and an agent of the SCC. Mehalek is the Commissioner of the SCC and the agent of the SCC. Plaintiffs further allege that both of these Defendants were at various meetings and were involved in the decisions that constituted intentional discrimination. Accordingly, Plaintiffs have sufficiently pled that Phelan and Mehalek exerted managerial control or influence over the SCC. Accordingly, the

Motion to Dismiss is denied.

Phelan and Mehalek also seek a more definite statement. Plaintiffs' Second Amended Complaint specifies which Defendants participated in each numbered allegation. Accordingly, Phelan and Mehalek are able to properly respond to those allegations against them. The Motion for a More Definite Statement is denied.

Based on the above, Phelan and Mehalek's Motion to Dismiss and for a More Definite Statement is denied.

Dated: January 23, 2003

JOHN W. DARRAH
United States District Judge